# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SHERI BUTLER BROCKINGTON, on behalf of herself and others similarly situated, | : : : : |
| Plaintiff, | : : CIVIL ACTION NO. 3:25-cv-00161 |
| v. | : **JURY DEMANDED** : : |
| HUME HEALTH CORP., | : : |
| Defendant. | : : : |

## DEFENDANT HUME HEALTH CORP.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Hume Health Corp. ("Defendant" or "Hume"), by and through counsel, respectfully submits this reply in further support of its motion for summary judgment ("Motion") as to Plaintiff Sheri Butler Brockington's ("Plaintiff" or "Ms. Brockington") claims based on violations of the Telephone Consumer Protection Act ("TCPA").

## INTRODUCTION

To fulfill its burden on summary judgment, Hume was required to make a prima facie showing of Plaintiff's consent. Hume easily does so. As set forth in the Motion, Plaintiff provided her express written consent to receiving text messages from Hume when, from a location in Hixson, Tennessee, she visited Hume's website, filled out the online form, added her own phone number and email address, clicked "SIGN UP," and submitted the form. Hume's evidence, which includes sworn declarations, verified interrogatory responses, and incontrovertible documentary evidence, establishes as much. Plaintiff's Opposition does not come close to showing otherwise.

In her Opposition, Plaintiff initially focuses on trying to poke holes in Hume's evidence. According to Plaintiff, Hume's evidence is "speculative" because Hume did not personally

"observe[] what [Plaintiff] actually saw or did on her device on January 22, 2025."[1] For her proposition that a TCPA defendant, to establish consent, must prove it was physically present to witness the plaintiff filling out the consent form, Plaintiff cites no support. None exists.

After trying (and failing) to argue that Hume is relying on "speculation," Plaintiff, with zero irony, offers speculation. By way of evidence, Plaintiff offers her own self-serving (speculative) statement: "I am not sure how Hume Health obtained my telephone number, but they did not obtain it from me."[2] Plaintiff also advances an unfounded, unsubstantiated theory of how Hume *might have* obtained her phone number (it could have been "fraud"). In lieu of evidence, Plaintiff just cites articles discussing how companies *can* obtain phone numbers, which is indicative of nothing. Here, the question is whether, based on the record evidence, a reasonable jury could find in Plaintiff's favor. And here, no rational jury could find that Hume obtained Plaintiff's number from anyone other than Plaintiff, when she (now) admits to visiting Hume's website, and the evidence shows that *someone* in her town of Hixson, Tennessee, while visiting Hume's website, entered her phone number—and signed up for the texts at issue.

Because Plaintiff cannot avoid these facts, she resorts to arguing that her consent doesn't really count as "consent" because Hume's website form does not contain a litany of disclosures in the E-Sign Act. Under the plain language of the E-SIGN Act, however, such disclosures are only needed when the underlying statute requires them. The TCPA does not require such disclosures. Moreover, under the (relevant, applicable) case law, Hume's consent form is legally valid.

---

[1] *See* Plaintiff's Response in Opposition to Summary Judgment (ECF No. 42) ("Opp.") at p. 4.

[2] *See* Declaration of Sheri Butler Brockington (ECF No. 42-1) ("Brockington Decl.") at ¶ 5.

1

Ultimately, Plaintiff, despite failing to oppose Hume's motion to stay discovery pending the resolution of this Motion, contends additional discovery is needed to oppose the Motion. As Plaintiff tells it, her discovery requests, if only answered, will confirm Hume that obtained her phone number as "a product of lead fraud." Plaintiff declines to mention that Hume already answered Plaintiff's discovery requests to explain how it obtained Plaintiff's number—and it was not by lead fraud. Plaintiff might not like the answers she received. But that does not mean she is entitled to additional discovery, when no further discovery will prompt Hume to change its answer.

Because the evidence shows that Plaintiff consented to receiving the texts at issue, and Plaintiff fails to fulfill her burden of showing otherwise, the Court should grant Hume's Motion.

## **PROCEDURAL BACKGROUND**

Plaintiff filed this action nearly seven months ago, on April 17, 2025. ECF No. 1. In her Complaint, Plaintiff alleges that Hume sent her text messages without obtaining her consent. *See id*. Plaintiff also expressly alleges that she had never "sought out or solicited information regarding Defendant Hume Health's services prior to receiving the [text messages] at issue." *Id*. at ¶ 18.

On July 1, 2025, Plaintiff served discovery requests, including requests for production and interrogatories.[3] Hume timely served responses and objections, including to Plaintiff's requests seeking information as to how Hume obtained her telephone number. *See* Hughes Decl. ¶ 3. On September 9, 2025, Hume produced documents showing that Plaintiff had, in fact, visited its website—and consented to receiving the texts at issue. *Id*. at ¶ 4; *see also* ECF No. 34-2.

On October 14, 2025, Hume filed the Motion (ECF Nos. 35, 37), along with a Motion to Stay Discovery ("Motion to Stay"). ECF Nos. 32, 33. In its Motion to Stay, Hume maintained that

---

[3] *See* Declaration of Erika Hughes in Support of Hume's Motion to Stay Discovery (ECF No. 34) ("Hughes Decl.") at ¶ 2.

2

discovery should be stayed pending the resolution of the Motion because further discovery would not alter the outcome. *Id*. As Hume explained, it had already answered Plaintiff's discovery requests to explain exactly how it obtained Plaintiff's phone number (from Plaintiff). *See id*.

Plaintiff's opposition to Hume's Motion to Stay was due on October 28, 2025. *See* L.R. 7.1(a). This deadline came and went. Plaintiff never filed any opposition to the Motion to Stay.

On November 4, 2025, Plaintiff filed her Opposition to Hume's Motion. ECF No. 42. In it, Plaintiff admits that, contrary to her allegations in the Complaint, she had, in fact, "visited Hume's website" after seeing an online advertisement. Opp. at p. 5; *see also* Brockington Decl. ¶ 2. Plaintiff asks the Court to credit her assertion that she did not provide her telephone number regardless.

## ARGUMENT

I. **Hume's Evidence Confirms That Plaintiff Provided Her Own Phone Number; Plaintiff's Self-Serving Declaration and Speculation Cannot Create a Triable Issue of Fact Where None Exists.**

Plaintiff opens her Opposition by contending that Hume's evidence is "speculative" and "not based on personal knowledge." Opp. at p. 4. Plaintiff is wrong. To advance these arguments, Plaintiff distorts Hume's declarations, relies on a flawed understanding of the personal knowledge requirements set forth in Fed. R. Civ. P. 56(c)(4), and ignores the relevant case law.

Taking these points in order, Hume's declarants do not "describe how its site and analytics platforms generally work and what a user 'would have' seen." Opp. at p. 4. Rather, Hume's declarants describe the precise steps that Plaintiff took, upon visiting Hume's website on January 22, 2025, to provide her consent to receiving text messages, along with the precise language that was in effect at the time that Plaintiff provided such consent.[4] This does not create any speculation

---

[4] *See* Declaration of Marius Ronnov (ECF No. 35-1) ("Ronnov Decl."); *see also* Declaration of Siu Media (ECF No. 35-2) ("Uskans Decl.").

whatsoever as to what Plaintiff "would have seen," as Plaintiff maintains. Self-evidently, Plaintiff would have seen (and, in fact, did see) the exact same pop-up window every other consumer saw, based on the consent form that was in effect at the time she provided her consent, which remains in place today. *See* Ronnov Decl. ¶¶ 2, 6, 7; *see also* Uskans Decl. ¶ 2. To the extent any additional clarity is needed, Hume's CEO has already provided it: the same language "appeared to any individual visiting Hume's website, *including Plaintiff*." Ronnov Decl. ¶ 2 (emphasis added).

Still, according to Plaintiff, Hume's declarations fail to satisfy the "personal knowledge" requirement of Fed. R. Civ. P. 56(c)(4) because Hume did not personally "observe[] what Brockington actually saw or did on her device on January 22, 2025." Opp. at p. 4. Plaintiff misapprehends the personal knowledge requirement. The salient question is not whether Hume was physically present in Tennessee, looking over Plaintiff's shoulder and watching her fill out the consent form (plainly, Hume was not). The question is whether Mr. Ronnov, Hume's CEO, has personal knowledge of his own company's marketing practices and the consent process, including based on his review of Hume's records (plainly, he does). *See, e.g.*, *Lloyd v. Midland Funding, LLC*, 639 Fed. Appx. 301, 305 (6th Cir. 2016) (rejecting argument that company representative's affidavit did not fulfill the personal knowledge requirement of Rule 56(c)(4) for similar reasons). Accepting Plaintiff's argument—that only she could actually "know" what she saw on January 22, so whatever she says must go, whether believable or not—would require ignoring the language of Rule 56 and throwing the standard for summary judgment out the window. Because this is clearly impermissible, Plaintiff's effort to challenge Hume's declarations as speculative or otherwise insufficient falls flat.

The same is true of Plaintiff's effort to fault Hume's documentary evidence (ECF No. 35-2, Exhibit A), which amounts to the following sentence: "Screenshots and after-the-fact data …

only [show] what Hume's systems now contain." Opp. at 4. True, but legally irrelevant. Companies are not obligated to access and print their records in real time in anticipation of TCPA claims. For her proposition that such "after-the-fact" data—which is more accurately described as current data, just accessed after the fact that consent was provided—is somehow inherently "speculative," Plaintiff relies on *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 487 F. Supp. 2d 861 (E.D. Ky. 2007). There, the Court denied a defendant's motion for summary judgment—on the issue of "whether there is an antitrust injury"—because the defendant's argument was "based on its speculation that it is more efficient than its competitors." *Id*. at 885.[5] *Lexmark* is wholly inapposite.

As to the applicable case law addressing similar (TCPA) claims, it confirms that Hume's evidence is sufficient—and sufficient to prevail—on summary judgment. For instance, in *Johansen v. EFinancial LLC*, No. 2:20-cv-01351-RAJ-BAT, 2021 U.S. Dist. LEXIS 251092 (W.D. Wash. June 11, 2021), a purported TCPA class action, the defendant life insurance company supported its motion for summary judgment with a declaration, which, among other things, explained the process by which customers request life insurance quotes through online landing pages. *See id*. at *3-6. The declaration also set forth the language customers viewed prior to entering their contact information and providing consent; plus, it appended records, including "screenshots" (and other "after-the-fact" data), showing the plaintiff had provided such consent. *See id*. As the Court held: "In light of the evidence presented … no reasonable jury could find that someone other than Plaintiff submitted the online request to obtain a life insurance quote and provided consent to be called. As such, no genuine issue of material fact exists[.]"). *Id*. at *28 (recommending summary judgment), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS

---

[5] To the extent Plaintiff's reliance on this inapposite case accomplishes anything, it only confirms the flaws in Plaintiff's argument as to lead fraud, which is also based on pure speculation.

5

8798 (W.D. Wash. Jan. 18, 2022). Other Courts have relied on similar reasoning to reach the same conclusion. *See, e.g.*, *Morris v. Modernize, Inc.*, No. AU-17-CA-00963-SS, 2018 U.S. Dist. LEXIS 232701, at *6-7 (W.D. Tex. Sep. 27, 2018) (granting defendant's motion for summary judgment on TCPA claims based on consent when the evidence, including a declaration relying on the company's records, showed the plaintiff had submitted the web form and consented to phone calls).

Ultimately, Plaintiff contends "she is not required to prove a negative by demonstrating that she did not submit the alleged form or provide her phone number." Opp. at p. 5. Plaintiff is, however, required to proffer evidence establishing that a genuine issue of material fact exists as to her consent. *Id.* at p. 3. Meaning: "'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (citations omitted). Here, Plaintiff just offers her own declaration, where she now admits that she visited Hume's website, but insists she did not see a consent form, submit her personal information, or provide her consent. Brockington Decl. ¶¶ 2-5. Plaintiff's self-serving assertions are insufficient to create a triable issue of fact. *See, e.g.*, *Capital Telecom Holdings II v. Grove City*, 403 F. Supp. 3d 643, 649 (S.D. Ohio 2019) ("Self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment."); *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

Plaintiff's declaration is otherwise deficient, for a related reason. Plaintiff provides no facts or supporting evidence whatsoever (e.g., her internet browser history, or any information regarding her whereabouts) to show it was impossible for her to have submitted the online form. For instance, Plaintiff does not claim she does not live in Hixson, Tennessee;[6] that she was not in town on

---

[6] A simple Google search reveals that a "Sheri Brockington" lives in Hixson, Tennessee.

January 22, 2025, when her information was submitted from Hixson, Tennessee; that the email address "sbrockington" does not belong to her; or that the IP address listed on Hume's documents (ECF No. 35-2, Exhibit A) does not belong to her. Plaintiff just speculates that Hume got her information somewhere else. Brockington Decl. ¶ 5 ("I am not sure how Hume Health obtained my telephone number, but they did not obtain it from me"). This, too, is insufficient. *See Johansen*, 2021 U.S. Dist. LEXIS 251092, at *24-25 (granting defendant's motion for summary judgment when plaintiff, despite attesting he did not visit defendant's website, provided "no facts or supporting evidence," such as browser history or "information regarding his whereabouts," "to show that it was impossible for him to have submitted the online form," and simply "speculate[d] that someone else submitted his information online"); *see also, e.g.*, *Dibrell v. Rex*, No. 3:22-CV-208-KAC-JEM, 2025 U.S. Dist. LEXIS 70958, at *6 (E.D. Tenn. Mar. 12, 2025) ("A party may not avoid summary judgment by resorting to speculation[.]").

Plaintiff goes on to engage in further speculation via argument in her Opposition, which is uniquely deficient. Although Plaintiff maintains "a reasonable jury could find the 'submission' is the product of lead-generation fraud rather than Brockington's consent" (Opp. at p. 5), a reasonable jury could find no such thing. Plaintiff does not offer even a shred of evidence that Hume engaged in lead generation fraud. Instead, Plaintiff cites articles (Opp. at pp. 5-6), which are inadmissible hearsay. *See, e.g., Turner v. City of Taylor*, 412 F.3d 629, 652 (6th Cir. 2005) (affirming summary judgment because a "newspaper article was inadmissible hearsay" that "could not create a genuine issue of material fact for trial"). Moreover, even if the articles could be considered for the truth of the matters asserted (and they cannot), the articles would establish, at most, that "companies can obtain a consumer's telephone number from a website visit even when the consumer does not supply that information." Opp. at p. 6. No doubt, companies *can* obtain phone numbers from

7

individuals in myriad ways. But that has nothing to do with how *Hume* obtained *Plaintiff's* number, and Plaintiff has not identified any evidence of supposed fraud specific to her case.

Because Hume offers (admissible, competent) evidence to show that it obtained Plaintiff's phone number from Plaintiff, when she provided it on Hume's website and consented to receiving the text messages at issue, and Plaintiff fails to show that a triable issue of fact exists as to her consent, or that a reasonable jury could find in her favor, the Court should grant Hume's Motion.

### II. **Plaintiff's E-Sign Argument is Meritless: Hume was Not Required to Comply with the Consumer Disclosure Provisions of the E-Sign Act.**

In a futile effort to argue otherwise, Plaintiff goes on to maintain that, even if she did provide her phone number to Hume (she did), the consent Hume obtained is "legally deficient" because it does not contain a litany of "consumer disclosures" required by the E-Sign Act, including "(1) how to withdraw consent, and (2) the hardware and software requirements needed to access and retain electronic records." Opp. at pp. 6-7 (citing 15 U.S.C. § 7001(c)(1)(B)–(C)). But Hume was not required to provide these lengthy disclosures to obtain Plaintiff's consent.

Instead, as the relevant regulations make clear, in the TCPA context, the term "prior express written consent" means an agreement, in writing, that bears the signature of the person called or texted and includes "a clear and conspicuous disclosure informing the person signing" of very specific information, including that he or she is consenting to receiving such calls or texts. 47 C.F.R. § 64.1200(f)(9). No information as to "how to withdraw consent" or "hardware and software requirements" is mentioned, let alone required to be included, in this disclosure. *See id*.

Moreover, the plain language of the E-Sign Act makes clear that it does not "limit, alter, or otherwise affect any requirement imposed by a statute, regulation, or rule of law relating to the rights and obligations of persons under such statute, regulation, or rule of law other than a

8

requirement that contracts or other records be written, signed, or in nonelectronic form." 15 U.S.C. § 7001(b)(1). In short, the E-Sign Act does not disrupt the requirements in C.F.R. § 64.1200(f)(9).

Construing the E-Sign Act to inject the "consumer disclosures" into TCPA consent forms, as Plaintiff requests, would have the impermissible effect of altering these requirements. In addition, even the E-Sign Act confirms that its "consumer disclosures" are required only if the underlying statute requires providing certain information. *See* 15 U.S.C. § 7001(c)(1) ("…if a statute, regulation, or other rule of law requires that information relating to a transaction … be provided or made available to a consumer in writing …"). The TCPA has no such requirement.

For all of these reasons, Courts have rejected the same argument that Plaintiff is now advancing—that a plaintiff's consent to receiving telemarketing calls is legally invalid unless she first received the "consumer disclosures" listed in the E-Sign Act. *See, e.g.*, *Reinert v. Power Home Remodeling Grp., LLC*, No. 19-13186, 2020 U.S. Dist. LEXIS 214666, at *7 (E.D. Mich. Nov. 17, 2020) (rejecting plaintiff's argument that her consent was invalid because it did not include the "litany of disclosures" set forth in 15 U.S.C. § 7001(c), holding that Section 7001(c) of the E-Sign Act was not applicable, and explaining that "the E-Sign Act only requires that consent be accompanied by certain disclosures under specific statutes," and "Plaintiff has not shown that the TCPA is one of them"); *Morris*, 2018 U.S. Dist. LEXIS 232701, at *6-8 (rejecting similar argument for similar reasons and granting summary judgment based on plaintiff's consent).

As support for her proposition to the contrary, Plaintiff cites *Mantha v. QuoteWizard.com, LLC*, No. 1:19-cv-12235, 2021 U.S. Dist. LEXIS 245059, at *24 (D. Mass. Dec. 27, 2021), where a single Massachusetts Court agreed with this Plaintiff's counsel that the disclosures in 15 U.S.C. § 7001(c)(1) are required. There, the plaintiff also provided *evidence* that he had never visited the website or filled out the consent form—including evidence showing that the IP addresses were

9

associated with two other individuals, and the email address did not belong to him—so it was unnecessary for the Court to consider the validity of the consent form. Based on the weight of authority—and plain principles of statutory construction—the lengthy disclosures in 15 U.S.C. § 7001(c)(1) are inapplicable in TCPA cases, and Hume's consent form is legally valid.

   III.   **Hume's Motion is Not Premature.**

In a last-ditch effort to avoid summary judgment, Plaintiff argues the Motion is "premature" under Fed. R. Civ. P. 56(d) "[b]ecause discovery has not begun." Opp. at p. 9. As Plaintiff's counsel (at least, partially) clarifies, however, discovery has indeed begun.[7] Paronich Decl. ¶ 4.[8] Indeed, discovery has been underway for several months. *See* ECF No. 34 at ¶¶ 2-3.

Nonetheless, Plaintiff contends Hume's Motion is premature because she "has not yet had the opportunity to take the discovery necessary to confirm how her phone number was obtained." Opp. at p. 9. Likewise, in his Rule 56(d) declaration, Plaintiff's counsel broadly attests that Plaintiff needs "discovery concerning how Hume obtained [her] phone number." Paronich Decl. ¶¶ 3, 6.[9] Which is doubly deficient. A Rule 56(d) declaration must specify a plaintiff's "need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Zakora v. Chrisman (In re Est. of Zakora)*, 44 F.4th 452, 479 (6th Cir. 2022) (citing *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). Plaintiff's Rule 56(d) declaration does not (and

---

[7] *See* Declaration of Anthony Paronich in Support of Plaintiff's Rule 56(d) Request (ECF No. 42-2) ("Paronich Decl.").

[8] Plaintiff's counsel also advances legal argument in his declaration (*see, e.g.*, Paronich Decl. ¶ 5), which is improper, and should be disregarded.

[9] Hume's counsel attests, in full, that Plaintiff needs "discovery concerning how Hume obtained the phone number it attributes to Ms. Brockington." Paronich Decl. ¶ 3. As noted below, in discovery, Plaintiff asked Hume how it obtained the phone number "423-718-3804," which Plaintiff also identifies as her phone number in the Complaint. ECF No. 1 ¶ 14 ("Plaintiff acquired her phone number, 423-718-XXXX"). So, *Plaintiff* attributes this phone number to herself.

10

cannot) explain why Plaintiff has not previously discovered how Hume obtained her phone number because *Plaintiff has already discovered this information*. Hume provided it some months ago.

On September 9, 2025, Hume produced documents showing that, on January 22, 2025, Plaintiff clicked on a Facebook advertisement and was redirected to Hume's website, where she provided her phone number to Hume. *See* ECF No. 34 ¶ 4; *see also* ECF No. 34-2. Moreover, nearly a month before producing these documents, on August 15, 2025, Hume served verified interrogatory responses (ECF No. 34 at ¶¶ 2-3) answering the same question in detail.

For example, Plaintiff's Interrogatory No. 6 asked Hume to: "Identify from whom, for what purpose, from where, when, why, and how Defendant obtained or procured telephone number 423-718-3804." In response, Hume stated, under penalty of perjury, that:

> Hume obtained the telephone number 423-718-3804 on or about January 22, 2025, when this telephone number was provided to Hume. Specifically, on or about January 22, 2025, an individual clicked on a Facebook advertisement for Hume's products, at which point a pop-up window appeared on that individual's computer or telephone screen with a blank space for the individual to provide an email and/or phone number, and, below this space, appeared the following language (or substantively identical language): "By submitting this form, you consent to receive information (e.g., order updates) and/or marketing texts (e.g., cart reminders) from Hume Health including texts sent by autodialer. Consent is not a condition of purchase ..." Below this language appeared the following two options: "SIGN UP," and "No Thanks." Upon viewing this language, the individual entered the telephone number 423-718-3804, along with the email address, sbrockington877@gmail.com, and clicked the box "SIGN UP."

Exhibit 1.

As this response makes clear, Hume has already provided the information that Plaintiff now claims she "needs" to oppose Hume's Motion. Plaintiff may not like Hume's answer. But that does not mean that further discovery is warranted, when, no matter how many times Plaintiff asks the same question, Hume's answer will remain the same.

11

Case 3:25-cv-00161-KAC-DCP   Document 43   Filed 11/11/25   Page 12 of 16
PageID #: 195

Although Plaintiff's last-ditch effort to avoid summary judgment fails for this reason alone, it is worth pointing out the additional flaws in Plaintiff's argument (and her Rule 56(d) declaration). In the face of a motion for summary judgment, a plaintiff is required to "come forward with more than a general and conclusory statement regarding the need for discovery." *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 282 (6th Cir. 2005). Likewise, mere "speculation" is "not enough to warrant . . . additional discovery." *Hightower v. Pizza*, No. 2:24-cv-02169-SHL-tmp, 2024 U.S. Dist. LEXIS 180458, at *14 (W.D. Tenn. Oct. 2, 2024). But that is all Plaintiff offers.

More specifically, Plaintiff broadly states, in a conclusory manner, that she needs unidentified "document[s]" and non-specific "depositions" to "substantiate" her "theory" that "Hume's purported consent was the product of lead fraud." Paronich Decl. ¶ 6. Plaintiff's general and conclusory assertions and conjecture are wholly insufficient to justify additional discovery under Rule 56(d). *See Zakora*, 44 F.4th at 463, 479 (declaration stating that "[t]he information to be discovered includes documentary and testimonial evidence to support the allegations in the Complaint" was insufficient, as it "did not attempt to describe with any specificity what discovery [plaintiff] sought or how that discovery would support its claims"); *see also Hightower*, No. 2:24-cv-02169-SHL-tmp, 2024 U.S. Dist. LEXIS 180458, at *14-15 (denying plaintiff's request to conduct additional discovery under Rule 56(d) that was based on an "unsupported hunch," and explaining that "rank speculation" in the face of record evidence that "tells a different story" is insufficient).

As Plaintiff points out, Rule 56 protects parties that cannot, for *valid* reasons, sufficiently oppose a motion for summary judgment. Opp. at p. 8 (citing *Mallory v. Noble Corr. Inst.*, 45 F. App'x 463, 469 (6th Cir. 2002)). Plaintiff has no valid reasons (or arguments). Indeed, to the extent Plaintiff's desperate grab for additional information accomplishes anything, it only confirms that

12

Case 3:25-cv-00161-KAC-DCP   Document 43   Filed 11/11/25   Page 13 of 16
PageID #: 196

Hume's Motion should be granted. Put differently, if Plaintiff cannot "justify her opposition" unless she can substantiate her unsubstantiated theory of lead fraud (and she cannot), then, by her own assessment, Plaintiff has no justification for her Opposition. Because Plaintiff has no justification for her Opposition regardless, since Hume easily fulfills its burden on summary judgment, and Plaintiff fails to establish that a genuine issue of material fact exists as to her consent, Hume's Motion should be granted.

## CONCLUSION

For all of the foregoing reasons, along with those set forth in its Motion, Hume respectfully requests that its Motion for Summary Judgment be GRANTED in its entirety, and that the Court grant any further additional relief as it deems just and proper.

Respectfully submitted this 11th day of November, 2025.

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

*/s/ Erika L. Hughes*
Robert F. Tom (TN #26636)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901.577.2159
rtom@bakerdonelson.com

Erika L. Hughes (TN #35755)
265 Brookview Centre Way, Suite 600
Knoxville, Tennessee 37919
Telephone: 865.549.7130
ehughes@bakerdonelson.com

13

**SCALE LLP**

*/s/ Sabina S. Schiller*
Sabina S. Schiller (admitted *pro hac vice*)
548 Market Street, Suite 86147
San Francisco, California 94014
Telephone: 816.699.3129
sschiller@scalefirm.com

**Attorneys for Defendant**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2025, a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Erika L. Hughes*

15

Case 3:25-cv-00161-KAC-DCP   Document 43   Filed 11/11/25   Page 16 of 16
PageID #: 199